**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHARI LINDENBAUM, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:17-cv-1991 |
| Plaintiff, | ) ) | Hon. Solomon Oliver, Jr. |
| v. | ) ) | |
| LYFT, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS OR TO STAY**

Stephen E. Baskin (0065662)
Archis A. Parasharami (*pro hac vice*)
Daniel E. Jones (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20001
(202) 263-3000
sbaskin@mayerbrown.com

*Counsel for Defendant Lyft, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 4

      A.      The Lyft App ................................................................................................. 4

      B.      Lindenbaum's Complaint ............................................................................. 4

LEGAL STANDARDS .............................................................................................. 6

ARGUMENT .............................................................................................................. 7

I.      Lindenbaum's Claims Should Be Dismissed For Failure to State A Claim. ....................... 8

      A.      Lindenbaum's Second Cause of Action For Violation Of The TCPA's Do-Not-Call Regulations Should Be Dismissed Because The Text Messages At Issue Are Not "Telephone Solicitations" Or "Telemarketing." ....................... 8

      B.      Lindenbaum's First Cause Of Action Fails Because She Has Not Plausibly Alleged That Lyft Used An ATDS. ........................................................ 10

II.      In The Alternative, A Stay Is Appropriate Pending The D.C. Circuit's Resolution Of The Validity Of The FCC's 2015 Order In *ACA International* .................................. 13

      A.      Lindenbaum's Claims Depend On The Validity Of The 2015 Order ................. 13

      B.      *ACA International* Will Decide The Legal Issues Presented Here. ........................ 17

III.      The Balance Of Hardships And Judicial Economy Favor Granting A Stay. ..................... 18

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdallah v. FedEx Corp. Servs., Inc.*,
 2017 WL 3669040 (N.D. Ill. Mar. 20, 2017) ...........................................................................8

*Abplanalp v. United Collection Bureau, Inc.*,
 2016 WL 483132 (W.D.N.C. Feb. 5, 2016) .............................................................................8

*ACA International v. FCC*,
 No. 15-1211 (D.C. Cir.) ..................................................................................... *passim*

*Aikens v. Synchrony Fin. d/b/a Synchrony Bank*,
 2015 WL 5818911 (E.D. Mich. July 31, 2015) ....................................................................11

*Amodeo v. GrubHub, Inc.*,
 2017 WL 5166647 (N.D. Ill. Aug. 11, 2017) .............................................................3, 8, 18

*Ankcorn v. Kohl's Corp.*,
 2017 WL 395707 (N.D. Ill. Jan. 30, 2017) ...........................................................8, 16, 18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................................................6

*Baird v. Sabre Inc.*,
 995 F. Supp. 2d 1100 (C.D. Cal. 2014) .............................................................................14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................................................6

*Blow v. Bijora, Inc.*,
 191 F. Supp. 3d 780 (N.D. Ill. 2016) .................................................................................3

*Bowden v. Contract Callers, Inc.*,
 2017 WL 1732017 (N.D. Cal. Apr. 5, 2017) ...................................................................8, 18

*Brickman v. Facebook, Inc.*,
 230 F. Supp. 3d 1036 (N.D. Cal. 2017) .............................................................................13

*Clayton v. Synchrony Bank*,
 2016 WL 7106018 (E.D. Cal. Nov. 7, 2016) ........................................................................8

*Coatney v. Synchrony Bank*,
 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016) ........................................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Coulter v. Ascent Mortg. Res. Grp.*,
  2017 WL 2219040 (E.D. Cal. May 18, 2017) ...................................................8

*Doerken v. USAA Savings Bank*,
  2017 WL 1534186 (C.D. Cal. Apr. 26, 2017) .................................................8

*Duguid v. Facebook, Inc.*,
  2017 WL 3128912 (N.D. Cal. July 24, 2017) ...............................................13

*Duguid v. Facebook, Inc.*,
  2017 WL 6351117 (N.D. Cal. Feb. 16, 2017) ...........................................2, 12

*Errington v. Time Warner Cable, Inc.*,
  2016 WL 2930696 (C.D. Cal. May 18, 2016) .................................................8

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) .......................................................................6

*Falack v. Synchrony Fin., Inc.*,
  2016 WL 4535387 (D.N.J. July 6, 2016) ......................................................8

*Flockhart v. Synchrony Bank*,
  2017 WL 3276266 (N.D. Iowa Aug. 1, 2017) ...............................................8

*Flores v. Adir Int'l*,
  685 F. App'x 533 (9th Cir. 2017) ...............................................................12

*Fontes v. Time Warner Cable Inc.*,
  2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ..............................................8

*Frable v. Synchrony Bank*,
  2016 WL 6123248 (D. Minn. Oct. 17, 2016) ...............................................8

*Freyja v. Dun & Bradstreet, Inc.*,
  2015 WL 6163590 (C.D. Cal. Oct. 14, 2015) .............................................10

*Gage v. Cox Communc'ns, Inc.*,
  2017 WL 1536220 (D. Nev. Apr. 27, 2017) ......................................8, 18, 19

*Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*,
  2010 WL 55973 (N.D. Ohio Jan. 5, 2010) .....................................................6

*Gray v. Morgan Drexen, Inc.*,
  2014 WL 2573227 (M.D. Fla. June 9, 2014) ...............................................15

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Holt v. Facebook, Inc.*,
240 F. Supp. 3d 1021 (N.D. Cal. 2017) ................................................................13

*Jacobs v. Ocwen Loan Servicing, LLC*,
2017 WL 1733855 (S.D. Fla. Apr. 14, 2017) ...........................................................8

*Jones v. Credit Acceptance Corp.*,
2016 WL 7320919 (E.D. Mich. Oct. 31, 2016) ...................................................8, 20

*Joseph v. Barclays Bank Delaware*,
2016 WL 8202737 (N.D. Ga. Dec. 12, 2016) ............................................................8

*Kennoy v. Synchrony Bank*,
2017 WL 2215279 (M.D. Pa. May 19, 2017) ...........................................................8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ..................................................................................................6

*Lilly v. Synchrony Fin.*,
2017 WL 1370698 (D. Nev. Apr. 7, 2017) ...............................................................8

*Lindenbaum v. CVS Health Corp.*,
No. 17-cv-1863 (N.D. Ohio filed Sept. 5, 2017) ....................................................5

*Lindenbaum v. Portfolio Recovery Assocs., LLC*,
No. 17-cv-1895 (N.D. Ohio filed Sept. 8, 2017) ....................................................5

*Maksymowski v. Navient Solutions, Inc.*,
2017 WL 486941 (E.D. Mich. Jan. 12, 2017) ......................................................8, 19

*Martin v. Comcast Corp.*,
2013 WL 6229934 (N.D. Ill. Nov. 26, 2013) .........................................................15

*Mechacha-Estrada v. Synchrony Bank*,
2017 WL 4990561 (D. Utah Oct. 30, 2017) .............................................................7

*In re Microsoft Corp. Antitrust Litigation*,
214 F.R.D. 371 (D. Md. 2003) ..................................................................................6

*Mierzwicki v. Citigroup, Inc.*,
2015 WL 10963619 (S.D. Fla. Sept. 1, 2015) ........................................................10

*Mizell v. Conn Appliances, Inc.*,
2017 WL 4347702 (E.D. Tex. Sept. 28, 2017) .........................................................7

iv

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Murphy v. DCI Biologicals Orlando, LLC*,
    2013 WL 6865772 (M.D. Fla. Dec. 31, 2013)........................................................15

*Norman v. N. Ill. Gas Co.*,
    2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ..........................................................10

*Pinkard v. Wal-Mart Stores, Inc.*,
    2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ......................................................15

*Rajput v. Synchrony Bank*,
    2016 WL 6433134 (M.D. Pa. Oct. 31, 2016) ........................................................8

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ..............................................................................6

*Reynolds v. Geico Corp.*,
    2017 WL 815238 (D. Or. Mar. 1, 2017)...........................................8, 18, 19, 20

*Reynolds v. Time Warner Cable, Inc.*,
    2017 WL 362025 (W.D.N.Y. Jan. 25, 2017) ........................................................8

*Ricketts v. Consumers Energy Co.*,
    2017 WL 2351731 (E.D. Mich. May 31, 2017).................................................8, 20

*Ricks v. Allied Interstate, LLC*,
    2016 WL 4505173 (M.D. Fla. July 11, 2016) ......................................................8

*Robinson v. Nationstar Mortgage, LLC*,
    2016 WL 6275192 (S.D. Ga. Oct. 25, 2016) ........................................................8

*Rosales v. Heath*,
    2017 WL 2533365 (D. Neb. June 9, 2017)...........................................................8

*Rose v. Wells Fargo Advisors, LLC*,
    2016 WL 3369283 (N.D. Ga. June 14, 2016) ......................................................8

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
    788 F.3d 218 (6th Cir. 2015) ............................................................................14

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ............................................................................10

*Saunders v. NCO Fin. Sys., Inc.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ...............................................................14

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Seri v. Crosscountry Mortg., Inc.*,
2016 WL 5405257 (N.D. Ohio Sept. 28, 2016) .................................................................9

*Simms v. Synchrony Bank*,
2017 WL 3382072 (N.D. Ga. June 27, 2017) .............................................................8, 19

*Small v. GE Capital, Inc.*,
2016 WL 4502460 (C.D. Cal. June 9, 2016) ...................................................................8

*Stone v. INS*,
514 U.S. 386 (1995) .........................................................................................................6

*Tilley v. Ally Fin., Inc.*,
2017 WL 1732021 (E.D. Mich. Apr. 26, 2017) ...............................................................8

*Washington v. Six Continents Hotels, Inc.*,
2017 WL 111913 (C.D. Cal. Jan. 9, 2017) ......................................................................8

*Weisberg v. Stripe, Inc.*,
2016 WL 3971296 (N.D. Cal. July 25, 2016) .............................................................2, 12

*Williams v. City of Cleveland*,
2011 WL 2848138 (N.D. Ohio July 14, 2011) ...........................................................7, 18

*Williams v. Nationstar Mortgage, LLC*,
2016 WL 6905382 (D. Or. Nov. 23, 2016) ................................................................8, 19

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. § 1292(b) ...........................................................................................................13

28 U.S.C. § 2342(1) .............................................................................................................3

47 C.F.R. § 64.1200(a)(2) ..................................................................................................14

47 C.F.R. § 64.1200(c) .....................................................................................................5, 9

47 C.F.R. § 64.1200(d) .....................................................................................................5, 9

47 C.F.R. § 64.1200(e) .....................................................................................................5, 9

47 C.F.R. § 64.1200(f)(12) ..................................................................................................9

47 C.F.R. § 64.1200(f)(14) ..................................................................................................9

vi

## TABLE OF AUTHORITIES
### (continued)

Page(s)

47 U.S.C. § 227(a)(1).................................................................................11

47 U.S.C. § 227(a)(4)..................................................................................9

47 U.S.C. § 227(b)(1)(A).....................................................................5, 11, 14

47 U.S.C. § 227(c) ......................................................................................5

47 U.S.C. § 227(c)(5)...................................................................................9

**MISCELLANEOUS**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    Report and Order, 7 F.C.C.R. 8752 (Oct. 16, 1992)......................................14

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    Report and Order, 18 F.C.C.R. 14014 (July 3, 2003).................................9, 10

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    Declaratory Ruling, 23 F.C.C.R. 559 (Jan. 4, 2008)....................................14

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    Declaratory Ruling and Order, 30 F.C.C.R. 7961 (July 10, 2015) .................. *passim*

## INTRODUCTION

Plaintiff Shari Lindenbaum seeks to sue under the Telephone Consumer Protection Act ("TCPA") because she alleges that she received informational text messages about Lyft's ridesharing service that were intended for another person.   Specifically, Lindenbaum acknowledges that an individual who downloads Lyft's mobile phone application provides his or her cellular telephone number to Lyft.  And she does not deny that one of her cellular telephone numbers previously was assigned to another individual who provided it to Lyft.   But she contends that because she received text messages intended for that individual, those texts violate the TCPA because *she*, unlike the prior subscriber to that number, did not consent to receive text messages from Lyft.

This type of "reassigned number" TCPA class action has become increasingly common in the wake of a 2015 order issued by the Federal Communications Commission.  *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 F.C.C.R. 7961 (July 10, 2015) ("2015 Order"); *see also, e.g.*, Compl. ¶¶ 18-20 (relying on same).   In the 2015 Order, the FCC interpreted the TCPA to require callers to obtain the consent of the *current* user of a reassigned number, even if the caller obtained any prior consent from the intended recipient of the call or text—and even if the caller is unaware that the number has been reassigned to someone else.  In addition, the 2015 Order affords callers an exceedingly limited safe harbor of a *single* call or text to the reassigned number before liability may be imposed.

As we discuss below, the validity of the FCC's order is currently subject to a challenge in the D.C. Circuit.  In the meantime, Lindenbaum's claims can and should be dismissed now for independent reasons.

First, Lindenbaum's allegations that Lyft violated the TCPA's do-not-call regulations fail

1

as a matter of law because the text of the statute and those regulations unambiguously limit their scope to calls or texts for *marketing* purposes.  Because the texts Lindenbaum alleges receiving are informational in nature—for example, informing a rider using Lyft's platform of the name of his or her driver and the type of vehicle, or that his or her ride has arrived—the do-not-call regulations are inapplicable.

In addition, Lindenbaum's first cause of action cannot stand because she has not plausibly alleged that the texts at issue were sent using an "automatic telephone dialing system" (ATDS).  The texts on their face are not sent randomly or sequentially, but rather affirmatively targeted to a specific Lyft rider based on requests made by that rider.  Courts that have considered similar allegations of messages that are directly targeted at a particular cellular phone number have held that those allegations do not suffice as a matter of law to plead the use of an ATDS.  *See, e.g.*, *Duguid v. Facebook, Inc.*, 2017 WL 6351117 (N.D. Cal. Feb. 16, 2017); *Weisberg v. Stripe, Inc.*, 2016 WL 3971296 (N.D. Cal. July 25, 2016).

But if this Court is not prepared to dismiss the lawsuit now, it should stay the case pending the D.C. Circuit's decision in *ACA International v. FCC*, No. 15-1211 (D.C. Cir.).  In *ACA International*, the petitioners are challenging the validity of key aspects of the FCC's 2015 Order—including ones on which Lindenbaum's claims are based.  Oral argument took place over one year ago (on October 19, 2016), suggesting that a decision is close at hand.

Most relevant here, the petitioners in *ACA International* squarely challenge the FCC's approach to the "reassigned number" problem.  In particular, the D.C. Circuit will be deciding (1) whether the FCC was empowered to and did properly interpret the TCPA to require the consent of the "current subscriber (or nonsubscriber customary user)," rather than the intended or expected recipient of the call; and (2) whether the FCC's single-call safe harbor for calls to

2

reassigned numbers is too restrictive. In addition, the D.C. Circuit will be deciding the validity of the FCC's sweeping definition of what qualifies as an ATDS under the statute.

If the Court does not dismiss Lindenbaum's claims now, then the outcome of the D.C. Circuit's decision on these issues will bear directly on the viability of those claims going forward. It therefore makes little sense for the parties and the Court to expend time and resources litigating this case before the D.C. Circuit rules. Instead, this Court should follow the course taken by district courts in at least *thirty-six* other TCPA cases that will be affected by *ACA International*—including at least seven reassigned number cases—and stay the proceedings pending the outcome of the D.C. Circuit's decision. As one of the judges hearing a reassigned number case against an application-based service operator recently put it, "a stay will simplify the issues in question and streamline proceedings in this Court and thus reduce the burden of litigation on the parties and the Court"—noting in particular that the D.C. Circuit's "ruling on whether the FCC exceeded its authority by holding companies strictly liable for calling or texting a wrong number belonging to a person who was not the intended recipient of the call will . . . influence this case." *Amodeo v. GrubHub, Inc.*, 2017 WL 5166647, at *3-4 (N.D. Ill. Aug. 11, 2017).[1]

Accordingly, if this Court declines to dismiss Lindenbaum's claims, it should stay the case pending *ACA International*.

---

[1] Lyft recognizes that this Court is not authorized to disagree with a valid final order by the FCC; such orders are binding on district courts nationwide under the Hobbs Act, which provides that only a court of appeals may "determine the validity" of a final FCC order. *See* 28 U.S.C. § 2342(1); *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 787 (N.D. Ill. 2016). Accordingly, as discussed below, Lyft preserves its right to challenge the validity of the FCC's Order in an appropriate forum.

**BACKGROUND**

**A.       The Lyft App**

Lyft is a mobile phone-based ridesharing platform.   Compl. ¶¶ 6-7.   It is designed to provide users with a friendly, safe, and affordable transportation option that matches people who need rides with people driving to or through those destinations.   *See* Lyft, https://www.lyft.com/ drivers.   Lyft connects riders and drivers via its mobile phone application, the Lyft App.   Lyft is now available in over 65 cities, including, Cleveland. *See* Lyft, https://www.lyft.com/cities.

Potential riders download the Lyft App to their mobile phones in order to request and pay for on-demand rides from other members of the Lyft community.   Compl. ¶ 9.   As part of registering to use the Lyft App, users provide a cellular telephone number at which they can be reached.   *Id.*   When a rider uses the Lyft App to request a ride, Lyft uses the phone number provided by the rider to inform the rider via text message of the name and vehicle information of the driver picking her up, and to alert her when the driver has arrived for a pickup.   *Id.* ¶ 11.

**B.       Lindenbaum's Complaint**

Plaintiff Shari Lindenbaum filed this putative class action against Lyft under the TCPA. Dkt. No. 1.   Lindenbaum alleges that, on several dates in March, May, and June 2017, she received "unsolicited" text messages from Lyft at her cellular telephone number.   Compl. ¶ 55. The messages provided the following information intended for another person (a Lyft rider): (1) that a Lyft driver had arrived, giving the driver's name and vehicle information (Compl. ¶¶ 59, 62, 66, 70, 74, 80); (2) that "You were charged a $5 fee for missing your Lyft ride" with a link to Lyft's cancellation policy (*id.* ¶ 60); (3) that "Lyft accommodates service animals and foldable wheelchairs" and provided a link where the recipient could "connect to local services" if in need of a vehicle with a ramp or lift (*id.* ¶¶ 58, 61, 65, 69, 73, 77-78); or (4) that "We found you a better driver who's already on the way.  Check the Lyft app for updates" (*id.* ¶ 79).

Lindenbaum does not allege whether she is a Lyft user, but she alleges that she "has never provided her prior express written consent to Lyft to receive autodialed text messages" at the phone number on which she received the messages at issue.  *Id.* ¶ 84.  She acknowledges that her current phone number is a "reassigned" number that is "associated with its previous owner's Lyft account."  *Id.* ¶¶ 24, 34, 85.  She brings two causes of action: (1) alleged violations of the TCPA's prohibition on using an "automatic telephone dialing system" to send a text to a cellular telephone number without "the prior express consent of the called party" (47 U.S.C. § 227(b)(1)(A);  Compl. ¶¶ 98-104);  and (2) alleged violations of the TCPA's Do-Not-Call regulations governing "telephone solicitations" to numbers on the National Do-Not-Call registry (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)-(e); Compl. ¶¶ 105-115).

Lindenbaum requests actual and statutory damages, along with injunctive and declaratory relief.  Compl. at 30-31.  She seeks to represent two nationwide putative classes, respectively consisting of (1) "[a]ll persons" who received text messages from Lyft at their cellular phone number and "for whom [Lyft] lacked prior express consent to send autodialed text messages to that cellular telephone number," and (2) all persons who received a text message from Lyft without consent and whose cellular phone numbers are on the National Do Not Call Registry (*id.* ¶ 90).

This is not the only putative TCPA class action that Lindenbaum has filed.  A few weeks before filing this case, Lindenbaum (represented by the same counsel) filed two other such lawsuits in this district.  *See Lindenbaum v. Portfolio Recovery Assocs., LLC*, No. 17-cv-1895 (N.D. Ohio filed Sept. 8, 2017); *Lindenbaum v. CVS Health Corp.*, No. 17-cv-1863 (N.D. Ohio filed Sept. 5, 2017).  (It is interesting that the other two lawsuits involve a different cell phone number than the one in this case, suggesting that Lindenbaum has been acquiring multiple

5

recycled cell phone numbers.  *Compare* Compl. ¶ 53 (number ending in "1471") *with* Complaint, No. 17-cv-1895, Dkt. No. 1, at ¶ 32 (number ending in "6078"); Complaint, No. 17-cv-1863, Dkt. No. 1, at ¶ 32 (same).)  Lindenbaum's filing of three TCPA lawsuits in three weeks may be explained by the fact that—as CVS's answer states—Lindenbaum is the sister-in-law of her lawyer.  Answer, No. 17-cv-1863, Dkt. No. 8, at ¶ 47 (N.D. Ohio Oct. 18, 2017).[2]

## LEGAL STANDARDS

*Motion to dismiss.*  To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility" standard is satisfied only if a complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  And the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*

*Motion to stay.*  The Supreme Court has "long recognized that courts have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Stone v. INS*, 514 U.S. 386, 411 (1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *accord Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 2010 WL 55973, at *2 (N.D. Ohio Jan. 5, 2010).  "In exercising

---

[2]     That relationship poses a substantial impediment to Lindenbaum's ability to serve as a proposed class representative.  *See, e.g.*, *In re Microsoft Corp. Antitrust Litigation*, 214 F.R.D. 371, 374-75 (D. Md. 2003) (finding sister-in-law of class counsel inadequate to serve as class representative); *see also generally Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) ("There ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs . . . uninfluenced by *family ties* or friendships.") (emphasis added); *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (vacating settlement class order where lead class counsel was son-in-law of class representative).

its substantial discretion to determine whether to grant a stay, a district court generally considers three factors: (1) any prejudice to the non-moving party if a stay is granted, (2) any prejudice to the moving party if a stay is not granted, and (3) the extent to which judicial economy and efficiency would be served by the entry of a stay." *Williams v. City of Cleveland*, 2011 WL 2848138, at *2 (N.D. Ohio July 14, 2011) (quotation marks omitted).

## ARGUMENT

This Court should dismiss Lindenbaum's claims for failure to state a claim. Lindenbaum asserts that Lyft allegedly violated the TCPA's do-not-call regulations, but those regulations are expressly limited to calls or texts for marketing or solicitation purposes, not informational texts like the ones Lindenbaum alleges receiving from Lyft. In addition, Lindenbaum has failed to plausibly allege that the texts at issue—which were directly targeted to a specific Lyft rider based on requests made by that rider—were made using an ATDS. These deficiencies are fatal to Lindenbaum's lawsuit, and call for dismissal of the case now.

In the alternative, this case should be stayed to await the impending decision in *ACA International*, in which the D.C. Circuit is considering the validity of the FCC order on which Lindenbaum's own claims depend. The appeal was argued over a year ago, in October 2016, and therefore is likely to be decided soon. It would be a tremendous waste of judicial and party resources for this case to proceed past the pleading stage when the D.C. Circuit is poised to issue a decision that could eliminate or substantially narrow Lindenbaum's claims. For this very reason, a host of federal courts from around the country—in at least **thirty-six** cases, including at least seven reassigned number cases—have granted stays pending the outcome of the *ACA International* appeal.[3] A stay is equally warranted here if the Court is not inclined to dismiss

---

[3]      *See, e.g.*, *Mechacha-Estrada v. Synchrony Bank*, 2017 WL 4990561 (D. Utah Oct. 30, 2017); *Mizell v. Conn Appliances, Inc.*, 2017 WL 4347702 (E.D. Tex. Sept. 28, 2017)

Lindenbaum's claims now.

I.    **Lindenbaum's Claims Should Be Dismissed For Failure to State A Claim.**

    A.    **Lindenbaum's Second Cause of Action For Violation Of The TCPA's Do-Not-Call Regulations Should Be Dismissed Because The Text Messages At Issue Are Not "Telephone Solicitations" Or "Telemarketing."**

Lindenbaum's second cause of action, based on the theory that the text messages violate the "Do-Not-Call" regulations, should be dismissed as a matter of law because the text messages do not qualify as "telephone solicitations" or "telemarketing."

---

(reassigned number case); *Amodeo*, 2017 WL 5166647 (reassigned number case); *Flockhart v. Synchrony Bank*, 2017 WL 3276266 (N.D. Iowa Aug. 1, 2017); *Simms v. Synchrony Bank*, 2017 WL 3382072 (N.D. Ga. June 27, 2017) (wrong number case); *Rosales v. Heath*, 2017 WL 2533365 (D. Neb. June 9, 2017); *Ricketts v. Consumers Energy Co.*, 2017 WL 2351731 (E.D. Mich. May 31, 2017); *Kennoy v. Synchrony Bank*, 2017 WL 2215279 (M.D. Pa. May 19, 2017); *Coulter v. Ascent Mortg. Res. Grp.*, 2017 WL 2219040 (E.D. Cal. May 18, 2017); *Gage v. Cox Communc'ns, Inc.*, 2017 WL 1536220 (D. Nev. Apr. 27, 2017) (reassigned number case); *Tilley v. Ally Fin., Inc.*, 2017 WL 1732021 (E.D. Mich. Apr. 26, 2017); *Doerken v. USAA Savings Bank*, 2017 WL 1534186 (C.D. Cal. Apr. 26, 2017); *Jacobs v. Ocwen Loan Servicing, LLC*, 2017 WL 1733855 (S.D. Fla. Apr. 14, 2017); *Lilly v. Synchrony Fin.*, 2017 WL 1370698 (D. Nev. Apr. 7, 2017); *Bowden v. Contract Callers, Inc.*, 2017 WL 1732017 (N.D. Cal. Apr. 5, 2017); *Abdallah v. FedEx Corp. Servs., Inc.*, 2017 WL 3669040 (N.D. Ill. Mar. 20, 2017); *Reynolds v. Geico Corp.*, 2017 WL 815238 (D. Or. Mar. 1, 2017) (reassigned number case); *Ankcorn v. Kohl's Corp.*, 2017 WL 395707 (N.D. Ill. Jan. 30, 2017) (reassigned number case); *Reynolds v. Time Warner Cable, Inc.*, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017); *Maksymowski v. Navient Solutions, Inc.*, 2017 WL 486941 (E.D. Mich. Jan. 12, 2017); *Washington v. Six Continents Hotels, Inc.*, 2017 WL 111913 (C.D. Cal. Jan. 9, 2017); *Abplanalp v. United Collection Bureau, Inc.*, 2016 WL 483132 (W.D.N.C. Feb. 5, 2016); *Joseph v. Barclays Bank Delaware*, 2016 WL 8202737 (N.D. Ga. Dec. 12, 2016); *Williams v. Nationstar Mortgage, LLC*, 2016 WL 6905382 (D. Or. Nov. 23, 2016); *Clayton v. Synchrony Bank*, 2016 WL 7106018 (E.D. Cal. Nov. 7, 2016); *Jones v. Credit Acceptance Corp.*, 2016 WL 7320919 (E.D. Mich. Oct. 31, 2016); *Rajput v. Synchrony Bank*, 2016 WL 6433134 (M.D. Pa. Oct. 31, 2016); *Robinson v. Nationstar Mortgage, LLC*, 2016 WL 6275192 (S.D. Ga. Oct. 25, 2016); *Frable v. Synchrony Bank*, 2016 WL 6123248 (D. Minn. Oct. 17, 2016); *Coatney v. Synchrony Bank*, 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016); *Ricks v. Allied Interstate, LLC*, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Falack v. Synchrony Fin., Inc.*, 2016 WL 4535387 (D.N.J. July 6, 2016); *Rose v. Wells Fargo Advisors, LLC*, 2016 WL 3369283 (N.D. Ga. June 14, 2016); *Small v. GE Capital, Inc.*, 2016 WL 4502460 (C.D. Cal. June 9, 2016); *Errington v. Time Warner Cable, Inc.*, 2016 WL 2930696 (C.D. Cal. May 18, 2016); *Fontes v. Time Warner Cable Inc.*, 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) (reassigned number case).

The TCPA provides a separate cause of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" by the FCC regarding the national do-not-call registry and caller-specific do-not-call requests.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)-(e); *Seri v. Crosscountry Mortg., Inc.*, 2016 WL 5405257, at *6 (N.D. Ohio Sept. 28, 2016).

Lindenbaum seeks to pursue a do-not-call claim (Compl. ¶¶ 105-115), but as she acknowledges in her complaint (*e.g.*, *id.* ¶¶ 107, 110), the national do-not-call registry regulations prohibit only certain "telephone solicitation[s]" (47 C.F.R. § 64.1200(c)), and the other relevant do-not-call regulations prohibit certain calls "for telemarketing purposes." *Id.* § 64.1200(d).  Both "telephone solicitation" and "telemarketing" are defined terms, which require that the call or text have "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Id.* § 64.1200(f)(12), (14); *accord* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" in the same manner).[4]  Likewise, the FCC's 2003 Order extending these regulations to wireless telephone numbers (*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 F.C.C.R. 14014 (July 3, 2003) (cited at Compl. ¶ 108)) makes clear "that calls that do not fall within the definition of 'telephone solicitation' as defined in section 227(a)(3) [now (a)(4)] *will not be precluded* by the national do-not-call list."  18 F.C.C.R. at 14039-40 (emphasis added).

---

[4]     The difference between "telephone solicitations" and "telemarketing" calls is that the former definition contains several exceptions, including "prior express invitation or permission"; "an established business relationship"; or contacts made by "a tax-exempt nonprofit organization." 47 C.F.R. § 64.1200(f)(14)(i)-(iii).

That is precisely the case for the texts at issue here.[5] They do not "encourag[e]" "purchase," "rental," or "investment" of any kind. Simply put, they are not selling anything. For example, a message telling the intended recipient that "Your Lyft driver, Mene, is here! Look for the Silver Toyota Camry" (Compl. ¶¶ 59, 63) is informational in nature, as are texts about fees for missed rides, how to request vehicles that accommodate service animals and foldable wheelchairs, and explaining that a new driver will be arriving. *See* page 4, *supra*.

Courts have not hesitated to dismiss claims under this section of the TCPA when the communications at issue are not telephone solicitations. *See, e.g.*, *Mierzwicki v. Citigroup, Inc.*, 2015 WL 10963619, at *2 (S.D. Fla. Sept. 1, 2015) (dismissing do-not-call claim based on debt collection calls, because the FCC has ruled that they "are not telephone solicitations and do not constitute telemarketing"); *Norman v. N. Ill. Gas Co.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing do-not-call claim where plaintiff "fails to allege telephone solicitations within the meaning of the TCPA"; "[e]ven viewing these allegations in the light most favorable to [plaintiff], the facts do not support the inference that the calls were made for solicitation of business"); *see also, e.g.*, *Freyja v. Dun & Bradstreet, Inc.*, 2015 WL 6163590, at *2 (C.D. Cal. Oct. 14, 2015) (granting summary judgment for calls requesting information; "[t]he regulation bans calls to sell property, goods, or services, not calls to acquire information").

In short, the texts in the complaint on their face are not telephone solicitations or telemarketing, and accordingly Lindenbaum's do-not-call claim should be dismissed.

### B.    Lindenbaum's First Cause Of Action Fails Because She Has Not Plausibly Alleged That Lyft Used An ATDS.

In addition, Lindenbaum's first cause of action should be dismissed because she has not plausibly alleged that Lyft used an ATDS to send her the texts at issue. Lindenbaum contends

---

[5]    Text messages are "calls" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also* 18 F.C.C.R. at 14115.

that the texts violate the TCPA's prohibition on "using any automatic telephone dialing system" (47 U.S.C. § 227(b)(1)(A)) to place calls or send text messages.  An ATDS is defined, in turn, as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.* § 227(a)(1).

Lindenbaum's complaint essentially repeats that definition.  Compl. ¶¶ 42, 99.  But courts routinely hold that "parroting the definition of an ATDS is insufficient under *Twombly* and *Iqbal*."  *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, 2015 WL 5818911, at \*4 (E.D. Mich. July 31, 2015) (collecting authorities) (alterations and quotation marks omitted), *report and recommendation adopted in relevant part*, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015).  Instead, courts look to the *content* and *context* of the alleged messages to see if they are consistent with the use of an ATDS.

Here, Lindenbaum alleges that she received text messages that are plainly informational in nature.  Lindenbaum's complaint acknowledges that the "triggering event" for the kinds of messages she has received is a Lyft user's request for a ride.  Compl. ¶ 43; *see also id.* ¶¶ 10-11.  And the complaint further acknowledges that Lindenbaum's number "is likely associated with another person's Lyft account" (*id.* ¶ 85)—namely, the rider to whom these messages were intended to be sent.  The content of the messages underscores that they were targeted in response to user requests rather than sent to random or sequentially generated numbers.  In response to a request for a pickup, for example, they inform a passenger of the name of the driver and a description of the arriving vehicle; alert the rider when the driver arrives at the requested pickup location; and provide accessibility information for people with disabilities.  *See* page 4, *supra*.

Under similar circumstances, courts have not hesitated to dismiss TCPA claims for a failure to allege plausibly that the defendant used an ATDS.  As Judge Tigar of the Northern

District of California put it, when "plaintiff's own allegations suggest *direct targeting* that is inconsistent with the sort of random or sequential number generation required for an ATDS," the plaintiff has failed to state a claim.  *Duguid*, 2017 WL 6351117, at *4 (emphasis added; quotation marks omitted).  In *Duguid*, the plaintiff alleged that Facebook sent him text messages saying that "Your Facebook account was accessed [from a browser] at [time.]  Log in for more info."  *Id.* at *1.  The court concluded that these directly targeted messages were not consistent with the use of an ATDS, and that the plaintiff's allegations were "[a]t best . . . conclusory" and "[a]t worst" contradicted by the plaintiff's allegations "suggest[ing] that Facebook does not dial numbers randomly but rather *directly targets selected numbers based on the input of users.*"  *Id.* at *5 (emphasis added).  Judge Tigar dismissed a TCPA claim in *Weisberg v. Stripe, Inc.* for the same reason.  In *Weisberg*, the company sent the plaintiff a text message stating: "Thanks for saving your payment info!  This number will be used to verify your identity at Registration and other sites using Stripe Checkout."  2016 WL 3971296, at *1.  Again, the court concluded that the complaint's "allegations suggest that Stripe's text messages are targeted to specific phone numbers," not sent *en masse* to random or sequential numbers.  *Id.* at *4.

Lindenbaum may point to a Ninth Circuit panel's recent unpublished opinion in *Flores v. Adir Int'l*, 685 F. App'x 533 (9th Cir. 2017), in which the court reversed an order dismissing a TCPA claim based on debt collection texts that appeared to be targeted in nature.[6]  But that unpublished, four-paragraph decision is not binding within the Ninth Circuit, much less on this Court.  Decisions like *Duguid* and *Weisberg* are more persuasive; indeed, as Judge Tigar put it in declining to set aside his prior *Duguid* order, the Ninth Circuit's decision in *Flores* contains "almost no analysis," and it is distinguishable on its facts, because there was no indication "that

---

[6]     Judge Tigar had cited the district court's opinion in *Flores* in his decisions in *Duguid* and *Weisberg*.

any action *by the [user]* had caused the defendant to send the challenged message." *Duguid v. Facebook, Inc.*, 2017 WL 3128912, at *2-3 (N.D. Cal. July 24, 2017) (emphasis added).  By contrast, here—as in *Duguid* and *Weisberg*—the complaint alleges that the text messages were sent in direct response to user actions.  That fact distinguishes this case (as well as *Duguid* and *Weisberg*) from two other cases involving claims against Facebook in which the court found that the plaintiff had plausibly alleged the use of an ATDS.  *See Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1028 (N.D. Cal. 2017) (contrasting "generic" texts from those in *Duguid*, which "appeared to be triggered by a human act directly related to the specific user's account"); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1042 (N.D. Cal. 2017) ("This is not a situation like *Weisberg* . . . where messages were *directly* triggered by an individual's affirmative acts inviting such communications.").[7]

    In short, because the texts Lindenbaum alleges receiving were targeted to a phone number associated with the account of a specific Lyft user based on affirmative requests for a ride by that user, she has not plausibly alleged the use of an ATDS.  Her first cause of action should be dismissed.

## II.   In The Alternative, A Stay Is Appropriate Pending The D.C. Circuit's Resolution Of The Validity Of The FCC's 2015 Order In *ACA International*.

### A.   Lindenbaum's Claims Depend On Key Aspects Of The 2015 FCC Order.

    The TCPA prohibits making "any call (other than a call made for emergency purposes or made *with the prior express consent of the called party*) using any automatic telephone dialing

---

[7]     Appeals (or efforts to appeal) are pending in *Duguid*, *Holt*, and *Brickman*.  In *Duguid*, the plaintiff has appealed the dismissal of his lawsuit, and the Ninth Circuit recently stayed the appeal to await the D.C. Circuit's decision in *ACA International* . *See* Dkt. No. 25, *Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir. Nov. 9, 2017).  In *Holt* and *Brickman*, the district judges certified questions for interlocutory appeal under 28 U.S.C. § 1292(b), and the court of appeals has stayed action on Facebook's petitions for permission to appeal pending the decision in *ACA International*.  *See* Dkt. No. 14, *Holt v. Facebook, Inc.*, No. 17-80086 (9th Cir. Aug. 17, 2017); Dkt. No. 12, *Brickman v. Facebook, Inc.*, No. 17-80080 (9th Cir. Aug. 17, 2017).

system or artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  In July 2015, a divided FCC issued an order interpreting this provision.  *2015 Order*, *supra*, 30 F.C.C.R. 7961.  Lindenbaum's complaint is predicated on that Order in two critical respects.

*1.    "Prior express consent" of the "called party."*  The FCC has long concluded that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given."  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 F.C.C.R. 8752, 8769 ¶ 31 (Oct. 16, 1992); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 F.C.C.R. 559, 564 ¶ 9 (Jan. 4, 2008) (reaffirming this view); *2015 Order*, 30 F.C.C.R. at 7991 ¶ 52 ("[E]xpress consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of instructions to the contrary, *by giving his or her wireless number* to the person initiating the autodialed or prerecorded call.") (emphasis added).[8]  This consent, as numerous courts have held, is a complete defense to TCPA liability.[9]

---

[8]    At times, Lindenbaum's complaint appears to allege that the relevant standard is "prior express *written* consent," not just "prior express consent."  Compl. ¶¶ 16-17, 84, 86; *but see id.* ¶ 90 (defining proposed class in terms of "prior express consent"); *id.* ¶ 101 (alleging that "[t]o the extent prior express written consent was required, Defendant failed to obtain" it).  The heightened written consent standard, however, applies only to a call or text "that includes or introduces an *advertisement* or constitutes *telemarketing*."  47 C.F.R. § 64.1200(a)(2) (emphases added); *see also Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 223 (6th Cir. 2015) (holding "that the [TCPA] unambiguously defines advertisements as having commercial components").  As discussed in Part I, *supra*, the informational texts at issue are not advertisements or telemarketing messages, and therefore are not subject to this heightened standard.

[9]    *See, e.g.*, *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) (holding that a telephone subscriber who "voluntarily furnish[es] [her] cellphone number to a vendor or other contractual counterparty" has given prior express consent to be contacted); *see also, e.g.*, *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102-03 (C.D. Cal. 2014), *aff'd*, 636 F.

The FCC's 2015 Order interpreted the term "called party" in the statute to refer to "the subscriber to whom the dialed wireless number is assigned," rather than the party that the caller intended to reach.  30 F.C.C.R. at 8001.  Based on that interpretation, the FCC concluded that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone)."  *Id.* at 7999; *see id.* at 8000 ("[T]he TCPA requires consent from the actual party who receives a call.").  And the FCC provided callers with a limited safe harbor of only ***one*** call to a reassigned number, after which liability can be imposed even if the first call was never answered or otherwise provided no indication that the caller reached the wrong individual.  *Id.* at 8009.

Lindenbaum's claims depend upon the FCC's approach to reassigned numbers.  *See, e.g.*, Compl. ¶¶ 18-20 (citing the 2015 Order).  As Lindenbaum herself recognizes (*id.* ¶ 85), the messages that Lindenbaum allegedly received were intended for the previous subscriber of Lindenbaum's phone number.  The complaint does not deny that the previous subscriber to Lindenbaum's number gave prior express consent to receive text messages when he or she provided the number to Lyft.  *See id.* ¶ 25; *see also id.* ¶ 9 (recognizing that "a consumer must provide a cellular telephone number to Lyft in order to utilize the service"); *id.* ¶ 44 (recognizing that "the cellular telephone numbers at issue in this case are likely associated with a Lyft account"); *id.* ¶ 85 (recognizing that Lindenbaum's number in particular "is likely associated with another person's Lyft account").

Moreover, Lindenbaum does not allege that she made any efforts to contact or inform Lyft of the reassigned number issue prior to the filing of this lawsuit.  Rather, Lindenbaum's sole

---

App'x 715 (9th Cir. 2016); *Gray v. Morgan Drexen, Inc.*, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014); *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *5 (M.D. Fla. Dec. 31, 2013); *Martin v. Comcast Corp.*, 2013 WL 6229934, at *3 (N.D. Ill. Nov. 26, 2013); *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012).

theory is that the prior express consent provided to Lyft by the previous subscriber to her cell phone number does not bar *her* TCPA claim because the phone number at issue has now been recycled and assigned to her, and *she* never gave Lyft consent to contact her at that number. If the D.C. Circuit concludes that the FCC's interpretation of "called party" in the reassigned number context is invalid, that would preclude Lindenbaum's claim altogether. And as Judge Dow noted in another reassigned number case, if the D.C. Circuit stops short of invalidating the FCC's interpretation of "called party" but "extends" the safe harbor provision "beyond the first call," that result too is "relevant to Defendant's potential liability" and "may affect the size of the putative class." *Ankcorn*, 2017 WL 395707, at *2, 4.

    *2.    Automatic telephone dialing system.* The 2015 Order also addressed what equipment qualifies as an ATDS under the statute. Private parties had asked the FCC to clarify that equipment only constitutes an ATDS if it has the "present ability to generate or store random or sequential numbers or to dial sequentially or randomly *at the time the call is made*." 30 F.C.C.R. at 7972 (emphasis added) (quotation marks omitted). But the FCC disagreed, concluding that "dialing equipment generally has the *capacity* to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose." *Id.* at 7971-72 (emphasis added).

    Lindenbaum's claims rely on this aspect of the 2015 Order as well. Lindenbaum does not allege—and could not allege—that Lyft randomly dialed her phone number to send the messages she purportedly received: the messages are clearly intended for one particular Lyft customer in direct response to rides or other services requested by that customer. As Lyft explains above (at 10-13), Lindenbaum does not plausibly allege the use of an ATDS at all. But assuming for the sake of argument that she has done so under the FCC's current interpretation of an ATDS, then

the validity of that interpretation—*i.e.*, that equipment can be deemed an ATDS "even if it is not presently used" to dial numbers randomly or sequentially (30 F.C.C.R. at 7972)—would likely be relevant to assessing the viability of Lindenbaum's claims.

      **B.**    *ACA International* **Will Decide The Legal Issues Presented Here.**

After the FCC issued its 2015 Order, a number of private parties petitioned for review of the order in the D.C. Circuit.  *See, e.g.*, Pet. for Review, *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. July 10, 2015).  The petitioners' joint brief squarely raises both of the issues discussed above: (1) "[w]hether the Commission unlawfully prevented callers from reasonably relying on the 'prior express consent of the called party' by imposing liability for innocent calls to reassigned numbers"; and (2) "[w]hether the Commission interpreted ATDS in a way that unlawfully turns on the equipment's potential rather than present abilities."  Joint Br. for Pet'rs at 4, *ACA Int'l*.

With regard to the first issue, the petitioners argue that the FCC's interpretation of the statute is wrong and that a caller should not be subject to TCPA liability if it had the prior express consent of the "previous [subscriber] who consented to be called and whom the caller expects to reach."  *Id.* at 40.  Instead, they explain, the "natural meaning of 'called party' is the expected recipient of the call."  *Id.*  Petitioners further argue that a contrary interpretation violates the First Amendment by chilling businesses' legitimate communications with their customers, and that the statute must at a minimum be interpreted to avoid these serious constitutional concerns.  *Id.* at 46-47.

On the second issue, the petitioners in *ACA Int'l* argue that only equipment with the present ability to generate and dial random phone numbers can qualify as an automated telephone dialing system under the statute.  *See id.* at 22-31.

17

For the reasons explained above, if the D.C. Circuit resolves the reassigned number issue in favor of the petitioners, that holding would eliminate Lindenbaum's claim.  It should be no surprise, then, that numerous district courts facing TCPA cases involving recycled or reassigned phone numbers have granted stays, recognizing that "*ACA International* may be dispositive of certain issues, or the entire outcome, of this action; [and] it will almost certainly significantly aid this Court's decision-making."  *Reynolds*, 2017 WL 815238, at *5; *see also, e.g.*, *Amodeo*, 2017 WL 5166647, at *3 (granting a stay where "the definition of ATDS and the 'called party' issue . . . are relevant to Defendant's potential liability"); *Gage*, 2017 WL 1536220, at *2 ("If the D.C. Circuit Court vacates all, or part, of the FCC ruling, it will dispose of a substantial portion of the issues in this case."); *Ankcorn*, 2017 WL 395707, at *2 (staying further proceedings because "two issues under consideration by the D.C. Circuit—(1) whether the statutory term 'called party' under the TCPA includes the 'intended recipient' of a telephone call; and (2) whether a safe harbor exemption for unintentionally calling the wrong person is limited only to the first such call or extends to other calls—are relevant to Defendant's potential liability").  The same is true here.

## III.    The Balance Of Hardships And Judicial Economy Favor Granting A Stay.

In light of the D.C. Circuit's anticipated decision, all three factors governing whether a stay is appropriate (*see Williams*, 2011 WL 2848138, at *2) favor a stay here.

### 1.    *A stay will not prejudice Lindenbaum.*    A stay in this case is likely to be brief.

As noted above, oral argument in *ACA International* was held more than a year ago, in October 2016.  The D.C. Circuit's decision will likely come soon—in a matter of weeks or months, not years.  A stay of such brief duration, particularly at this initial stage of the case, would not cause any prejudice to Lindenbaum.  *See, e.g.*, *Bowden*, 2017 WL 1732017, at *3 ("[T]he Court finds a stay [pending decision in *ACA International*] is unlikely to last more than a few months and,

consequently, the damage from granting such relief is, if any, minimal."); *Maksymowski*, 2017 WL 486941, at *1 ("[G]iven that the D.C. Circuit heard oral argument [in *ACA International*] in October 2016, the court anticipates that a stay would be relatively brief, ameliorating any prejudice to Plaintiff."). Likewise, "[a]ny delay in plaintiff's recovering monetary damages does not merit a stay." *Reynolds*, 2017 WL 815238, at *4.

2. ***Denial of a stay would prejudice Lyft.*** Denying a stay here, by contrast, would cause substantial prejudice to Lyft, forcing it to undergo burdensome and costly motion practice and discovery that may be rendered completely unnecessary if the D.C. Circuit rules in favor of the petitioners in *ACA International*. These clear hardships to Lyft justify a brief stay of the proceedings. As one court has summarized in staying a reassigned number case: "Other courts considering this issue have specifically found that the cost and burden of discovery and trial preparation are enough to constitute prejudice that justifies a stay. Because the D.C. Circuit's ruling [in *ACA International*] may moot Plaintiff's sole claim under the TCPA, the Court finds that a stay is warranted." *Simms*, 2017 WL 3382072, at *2; *see also, e.g.*, *Gage*, 2017 WL 1536220, at *2 ("[B]oth parties would be potentially harmed by unnecessary briefing and premature expenditures of time, attorney's fees, and resources if Defendant's Motion to Stay were not granted."); *Williams*, 2016 WL 6905382, at *3 ("[A] reduction in discovery would reduce the financial hardship defendant would sustain defending issues that could be rendered moot by the D.C. Circuit Court of Appeals' decision.").

3. ***A stay will conserve judicial resources.*** Finally, for many of the same reasons, a stay will serve the interests of judicial economy and efficiency. Just as it would be a waste of resources for Lyft and Lindenbaum to engage in motion practice and discovery on issues that could be overtaken by the D.C. Circuit's ruling, it would be a waste of resources for the Court to

adjudicate any motions and discovery disputes in the shadow of legal uncertainty over the validity of the FCC's 2015 Order.  Judicial economy would be best served by awaiting the D.C. Circuit's ruling, which may resolve the case entirely, and will, at a minimum, clarify the state of law and streamline any remaining issues.  As one judge staying a reassigned number case put it, a stay would greatly conserve judicial resources," which "weighs most heavily in favor of a stay"; the court specifically noted that *ACA International* "could directly affect" the issue of "whether defendant would be liable for allegedly sending text messages to a reassigned telephone number."  *Reynolds*, 2017 WL 815238, at *5; *see also, e.g.*, *Ricketts*, 2017 WL 2351731, at *2 ("It is also in the interest of judicial resources and economy to ensure that this matter is definitively resolved, and that key issues will not be revisited half-way through the case due to changes in law."); *Jones*, 2016 WL 7320919, at *3 ("In light of the uncertainty surrounding the proper interpretation of the TCPA and the lack of demonstrated prejudice to Jones, the interest of judicial economy warrants a stay . . . .").

## CONCLUSION

For the foregoing reasons, Lindenbaum's claims should be dismissed with prejudice.  In the alternative, this case should be stayed in its entirety pending the D.C. Circuit's decision in *ACA International*.

Dated: November 13, 2017                         Respectfully submitted,

                                                 */s/ Stephen E. Baskin*
                                                 Stephen E. Baskin (0065662)
                                                 Archis A. Parasharami (*pro hac vice*)
                                                 Daniel E. Jones (*pro hac vice*)
                                                 MAYER BROWN LLP
                                                 1999 K Street, N.W.
                                                 Washington, D.C. 20001
                                                 (202) 263-3000
                                                 sbaskin@mayerbrown.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 13, 2017, a copy of this **Memorandum of Law in Support of Defendant's Motion to Dismiss or to Stay** was electronically filed using the CM/ECF System.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


<u>/s/ Stephen E. Baskin</u>
Stephen E. Baskin